UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL E. HESLA,<br><br>                Plaintiff,<br><br>     vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner, Social Security<br>Administration;<br><br>              Defendant. | 4:14-CV-04129-KES<br><br><br>MEMORANDUM OPINION AND<br>ORDER REVERSING THE DECISION<br>OF THE COMMISSIONER |

Plaintiff, Carol E. Hesla, seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for child's insurance benefits (CIB) under Title II of the Social Security Act, 42 U.S.C. § 402(d). The Commissioner opposes the motion and moves the court to affirm the denial. For the following reasons, the court reverses and remands the decision of the Commissioner.

**PROCEDURAL HISTORY**

Hesla filed an application for CIB on January 27, 2009. AR 131.  The Commissioner denied her claim initially on May 8, 2009 (AR 61) and upon reconsideration on July 2, 2009. AR 70-71.  Hesla received a hearing before Administrative Law Judge (ALJ) John D. Sullivan on October 21, 2010. AR 27-57.  On November 15, 2010, the ALJ issued an opinion denying benefits. AR 13-19.  Upon request by Hesla, the Appeals Council reviewed the ALJ's opinion and affirmed the denial of benefits. AR 1-7.  Hesla appealed the denial of

benefits to the district court, which reversed and remanded the case for further proceedings. *Hesla v. Colvin*, 2013 WL 1305447 (D.S.D. 2013); AR 8330-52.

The Appeals Council then remanded the case to an ALJ for further review. AR 8242-44.  ALJ Robert Maxwell presided over the second administrative hearing on March 25, 2014. AR 8277-8304.  The ALJ denied Hesla's CIB claim on July 10, 2014. AR 8200-18.  Hesla appealed that decision to this court for review. The Appeals Council did not assume jurisdiction over the ALJ's decision, therefore Hesla's appeal of the Commissioner's final decision is properly before the court pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. Hesla's Biographical Information

Hesla was born in 1951 and is currently sixty-four years old.  Hesla's father, Alden Ranney, is a retired physician. AR 8332.  Hesla's mother passed away in 1979 when Hesla was twenty-eight years old. *Id.*  Hesla has two older brothers: David Ranney and Robert Ranney.  David Ranney is a retired physician and Robert Ranney is a pharmacist.

Hesla graduated from Yankton High School in 1969. AR 309. After high school, Hesla briefly attended Cottey College in Nevada, Missouri, and Augustana College in Sioux Falls, South Dakota. AR 319; AR 321.  Eventually, Hesla earned a Bachelor of Arts Degree in Music from Yankton College in Yankton, South Dakota. AR 42.  After graduating from Yankton College, Hesla briefly attended the New England Conservatory of Music in Boston, Massachusetts, but eventually returned to Yankton College to earn a teaching

certificate. AR 315-316. After earning her teaching certificate, Hesla attended the University of South Dakota in an attempt to obtain certification in dental hygiene, but dropped out of the program.  She married Greg Hesla in March, 1986. AR 138.  The couple divorced in March, 1992. *Id.* Hesla has a daughter who was born in July, 1988. AR 4852.

### B. Hesla's Medical Information

Hesla's medical records take up the majority of the administrative record in this case. The records which detail her medical care from birth through high school are sparse and often illegible. See AR 819-35.  The parties, however, generally agree that these records consist mostly of handwritten notes related to vaccinations and other typical childhood illnesses.  The first notation potentially related to depression or anxiety is found in the notes from an examination in 1974 where "nervousness" is specifically referenced. AR 4560.

The first record of professional treatment for mental health issues appears in 1984, when Hesla was thirty three years old. AR 4386.  Hesla received treatment at McKennan Hospital in Sioux Falls, South Dakota for urinary retention issues and effective depression. *Id.*  According to Dr. J.A. Ochsner, the retention issues were "related to neurovesical dysfunction secondary to medication and also related to psychogenic causes." AR 4387.  In 1985, Hesla's physician, Dr. Saoi, noted that Hesla "has had anxiety and depression the last two years since her mother died." AR 4800.  Outside of these two instances, there is no medical record of Hesla's anxiety or depression related symptoms between 1985 and 1991.

3

In May and December of 1991, Charter Hospital treated Hesla for exhaustion, panic attacks, and depression. AR 1694.  The records indicate that Hesla informed the physicians that she was "unable to remember any day in her life without numerous fears." *Id.*  After the examination, Charter physicians determined that Hesla had numerous fears, generalized anxiety, and depressive symptomology. *Id.*  She was proscribed Xanax and a behavior modification program for her phobias. *Id.*

Between 1984 and 2009, Hesla has endured seven psychiatric hospitalizations at the Avera McKennan Hospital system, nine psychiatric hospitalizations at the former Charter Hospital in Sioux Falls, South Dakota, and two psychiatric hospitalizations at the South Dakota Human Services Center in Yankton, South Dakota. AR 249.  Dr. David Bean provides a thorough summary of these inpatient hospitalizations in his Social Security Psychiatric Evaluation. AR 221-54.  In sum, Hesla's medical records exhibit a continuous pattern of psychological treatment.  In general, physicians continually diagnosed Hesla with depression and generalized anxiety disorder throughout her inpatient care. *See Id.*

### C. Lay Testimony in the Administrative Record

#### 1. Dr. Alden Ranney

Dr. Ranney is Hesla's father.  He is a retired physician, who specialized in gynecology and obstetrics.  Dr. Ranney testified in Hesla's first administrative hearing. AR 51-55.  He testified that Hesla had learning

disabilities as a child, and that he and his wife had concerns about Hesla's mental health throughout her childhood. *Id.*

Dr. Ranney also submitted three documents for review. AR 268-69; AR 400; AR 5960.  In the document titled "Past Medical History of Carol Ranney Hesla," Dr. Ranney detailed his understanding of Hesla's medical issues in chronological order. AR 5960.  Around the time of her mother's death in 1979, Dr. Ranney indicated that Hesla was "subject to anxiety." *Id.*  The report also stated that Hesla's symptoms deteriorated after the birth of her first child. *Id.*  In another document, Dr. Ranney described that Hesla likely suffered from low oxygen at the time of her birth as exemplified by blue coloring in her skin. AR 400.

### 2. Dr. David Ranney

Dr. David Ranney is Hesla's older brother.  He is a retired pathologist. Dr. David Ranney submitted an affidavit that contains his general observations and memories of Hesla as a child. AR 270-72.  Dr. David Ranney's affidavit indicates that he believes Hesla suffers from "significant left-brain mental dysfunctions and apparently has so since birth." AR 270.  Dr. David Ranney also believes Hesla's psychiatric disorders manifested between ages 6 and 8. *Id.* In support of this alleged onset date, Dr. David Ranney notes that he frequently observed situations where Hesla's childhood anxiety escalated into panic attacks. *Id.*  Based on his observations, these issues made everyday decisions difficult without "an excessive amount [of] advance input, advice and reassurance from family and friends." AR 271.

### 3. Robert Ranney

Robert Ranney is Hesla's oldest brother.  He also submitted an affidavit that details his memory of Hesla throughout her life. AR 273-74. Ranney's affidavit mirrors much of the information provided by other family members. He recalls that Hesla suffered from anxiety throughout her childhood that interfered with her education, her ability to interact with other children, and eventually, her ability to adequately perform a job. *Id.* Notably, Ranney describes how Hesla was overly dependent upon their mother up until her death, and only sought professional help after Mrs. Ranney was no longer available to provide consistent support. *Id.*

### 4. Dr. Margaret Tidd

Dr. Tidd is a childhood friend of Hesla.  She is also a child psychiatrist who practices in Ridgeland, Mississippi. AR 182.  Dr. Tidd submitted multiple documents for review in this case: Personal Recollections of Carol Ranney Hesla (AR 182), Psychiatric History/Assessment (AR 184), Overview (AR 190), as well as three letters to Hesla's attorney. AR 193-99.

Dr. Tidd's recollections of Hesla as a child are analogous with Hesla's family members. Dr. Tidd describes Hesla's personality as "shy and quiet" beginning in kindergarten. AR 182.  By fifth grade, she describes Hesla as socially awkward and often the target of jokes by other children. *Id.* Dr. Tidd noted that Hesla required excessive help with ordinary tasks like getting dressed and combing her hair. *Id.* Dr. Tidd also cited a common occurrence where Hesla became irritable if she was unable to follow a rigid daily routine.

6

*Id.* According to Dr. Tidd, these childhood traits all revolved around Hesla's severe dependence upon her mother for help with school work and other social interaction. AR 183.

In her professional opinion, Dr. Tidd submitted that Hesla would have been diagnosed with a clinical disorder as a child if she were professionally treated like many children are today. *Id.*  In Dr. Tidd's own words, "Carol's current disabilities clearly began in childhood and the manifestations which are apparent today, are typical of the natural history of Pervasive Developmental Disorder and its common co-morbidities." AR 184.  In a clinical sense, Dr. Tidd lists the following as possible DSM-IV diagnoses for Hesla: anxiety disorder, major depressive disorder, attention-deficit hyperactivity disorder, and personality disorder. *Id.*  In short, Dr. Tidd believes that Hesla has experienced many psychological and social problems since childhood.

### D. Expert Testimony in the Administrative Record

#### 1. Dr. David Bean

Dr. Bean is a practicing psychiatrist and professor of medicine at the Sanford School of Medicine at the University of South Dakota. AR 256. Dr. Bean personally treated Hesla for anxiety and depression related symptoms in 1999 and 2008. AR 232.  In support of Hesla's application for CIB, Dr. Bean prepared a report detailing Hesla's medical history, symptoms, and Dr. Bean's professional opinion regarding the onset of Hesla's psychological issues. AR 221-54.  In preparing this report, Dr. Bean relied upon lay testimony from

family and friends, academic records, medical records, his personal evaluation of Hesla during treatment, and a specific in-person interview. *Id.*

In Dr. Bean's opinion, Hesla's psychological issues manifested in her childhood. Specifically, Hesla likely "experienced both childhood and adolescent General Anxiety Disorder, Adolescent Social Anxiety Disorder, and persistent Avoidant and Dependent Personality Disorders, all of which have persisted into adulthood." AR 253.  Further, "[i]t is clear from the history of Ms. Hesla that she may have experienced a significant birth-related cognitive injury that likely is associated with her well-documented borderline intellectual disabilities which explains in part the embarrassment of her attempts at intellectual accomplishment." *Id.*  Eventually, Hesla's psychological symptoms were "brought to a level of catastrophe" by the loss of her mother's support and care. *Id.*

### 2.  Michael McGrath, Ph.D.

McGrath is a clinical psychologist who prepared a neuropsychological evaluation of Hesla. AR 286-95.  McGrath performed an in-person interview of Hesla and reviewed the report from Dr. Tidd.  McGrath concluded that "[Hesla] likely has been chronically subject to considerable anxiety and depression, which also can adversely affect her cognitive functioning. Given the history of dysphoria, along with the personality disorder and consequent cognitive impairment, it is not at all surprising that she has never been able to maintain meaningful employment." AR 295.

### 3. Richard Ostrander

Ostrander is a vocational expert who performed a vocational evaluation of Hesla to determine "whether or not she was employable or functioning at a level compatible with employability when she was a child." AR 296. Ostrander reviewed the following documents in preparation of this report: McGrath's neuropsychological evaluation, Dr. Tidd's reports and affidavits submitted in this case, Dr. David Ranney's affidavit, and Dr. Bean's Social Security Psychiatric Evaluation. *Id.* Ostrander also performed an in-person interview with Hesla. *Id.*

Ostrander believes that "Hesla would have been unable to maintain regular employment at any point throughout her life." AR 303.  Specifically, "[t]he combination of anxiety and her avoidant and dependent personality disorders would prevent her from attending to work on a regular basis in a manner consistent with competitive employment." *Id.*

### 4. Jerry Buchkoski, Ph.D.

Buchkoski completed a report entitled "Psychiatric Review Technique" to aid the agency's initial review of this case. AR 324-36.  Because this is a child's disability claim, Buchkoski reviewed Hesla's medical records from her date of birth through her twenty second birthday. AR 336.  Based on the lack of objective evidence in Hesla's medical records, Buchkoski determined there was insufficient evidence to establish that Hesla was disabled prior to her twenty second birthday. *Id.*

9

### 5. Dr. Kevin Whittle

At the request of a claims examiner, Dr. Whittle, a physician of internal medicine, submitted a report entitled "Case Analysis." AR 1057.  After reviewing Hesla's medical records detailing care from her date of birth to her twenty second birthday, Dr. Whittle determined Hesla's claims were not supported by the medical evidence. *Id.* As such, Dr. Whittle determined that Hesla's physical impairments were "non-severe during the time period in question." *Id.*

### 6. Kevin Schumacher, Ph.D.

Schumacher is a clinical psychologist licensed to practice in North Dakota and Minnesota.  Schumacher testified in the second administrative hearing on March 25, 2014. AR 8277.  While testifying, both the ALJ and Hesla's attorney questioned Schumacher. AR 8296-8300.

The ALJ's examination of Schumacher focused on objective medical evidence in the record as well as retrospective medical analysis. In response to a question about objective medical evidence, Schumacher testified that there was no evidence of diagnosed or treated mental health issues prior to 1973. AR 8297.  In regards to retrospective analysis, the ALJ asked the following question: "Does the objective evidence of record disclose the diagnosis or treatment of any mental health impairments after 1973, but which could reasonably be, infer that you would relate back and assume that it would have been in existence at that time?" *Id.* In response, Schumacher stated, "Well, I think so, and it's reasonable to extrapolate that. . . You know, certainly it's

plausible that both depression and anxiety might have pre-existed 1993." *Id.*
Schumacher later expanded upon this analysis by saying "it would be pure
speculation on my part, because there is just no objective evidence, your
honor." *Id.*

Hesla's attorney questioned Schumacher about Dr. Bean's report and
retrospective diagnosis. When asked if he disagreed with Dr. Bean's report,
Schumacher stated the following: "I don't have a basis for disagreement. I think
the question was[,] is there any evidence for, objective evidence, for
impairments prior to 1973, and I don't have basis for disagreement . . . I just
don't see any objective medical records that would support that." AR 8299.
Schumacher later clarified this answer by saying "Ma'am what I said was I
don't have a basis for agreeing or disagreeing. [Dr. Bean's] report is what it is. I
was asked whether there was any objective medical evidence for impairments
prior to 1973, and I said I didn't see any." AR 8300.

## 2014 ALJ DECISION

On July 10, 2014, the ALJ denied Hesla's claim for CIB. AR 8200-09. The
ALJ held that Hesla did not suffer from a medically determinable impairment
prior to reaching her twenty second birthday. AR 8202.  In coming to this
conclusion, the ALJ relied up on SSR 96-4p and testimony from Schumacher.

Social Security Ruling 96-4p provides the standard for identifying a
severe impairment. AR 8203.  In part, the ALJ stated "[a]lthough the
regulations provide that the existence of a medically determinable physical or
mental impairment must be established by medical evidence consisting of

signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone." AR 8203 (citing SSR 96-4p).

In the severe-impairment analysis, the ALJ gave "great weight" to the testimony of Schumacher. AR 8203.  The ALJ summarized Schumacher's testimony as follows:

> Amongst other matters, Dr. Schumacher testified that there is no evidence of diagnosed or treated mental health issues prior to June 15, 1973.  He further testified that the objective evidence of record does not disclose the diagnosis or treatment of any mental health impairments after 1973 that could reasonably be related back and have been in existence prior to age 22.  While Dr. Schumacher confirmed that it is plausible that the claimant's mental impairments may have been in existence prior to age 22, he clarified that it is equally plausible that they were not in existence.  Ultimately, Dr. Schumacher opined that it would be pure speculation on his part to arrive at a conclusion that the claimant's mental impairments existed prior to age 22.

AR 8203.  The ALJ gave great weight to Schumacher's testimony "because he is recognized by the Social Security Administration as a medical expert and is charged with being familiar with the requirements of the program." AR 8207. Ultimately, the ALJ held that "the medical opinions of Dr. Bean, Dr. Tidd, McGrath, Dr. Brooks Ranney and Dr. David Ranney and multiple third party statements do not provide objective evidence of a medically determinable impairment prior to June 15, 1973." AR 8208. "Rather, they are speculation that the claimant is impaired now, and looking back was so during the relevant time period." *Id.*

Near the conclusion of the opinion, the ALJ considered, and rejected, the argument that SSR 83-20 applies to the severe-impairment analysis. AR 8208-8209.  The ALJ stated "SSR 83-20 applies in cases where a disability has been shown, but the onset is unclear." AR 8209. "For the purpose of this claim, no disability has been shown prior to age 22, and regardless of how emphatic or sincerely presented, it cannot overcome the absence of objective medical evidence." *Id.* "Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to age 22." *Id.*

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). The court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined

the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

## CHILD'S INSURANCE BENEFITS

Hesla applied for child's insurance benefits as an adult child under 42 U.S.C. § 402(d) and 20 C.F.R. § 404.350. AR 131. According to the applicable statute and regulation, Hesla must satisfy the following requirements in order to collect insurance benefits:

1. She is the insured person's child.
2. She is dependent upon the insured person.
3. She applied for child insurance benefits.
4. She is unmarried; and
5. She has a disability that began before she turned twenty two years old.

42 U.S.C. § 402(d); 20 C.F.R. § 404.350.

## THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d. 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 1520(d).

**Step Four**: Determine whether the applicant can perform any past relevant work. 20 C.F.R. § 1520(e).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. 20 C.F.R. § 1520(f).

In Step One, the ALJ determined that Hesla is not presently engaged in any substantial gainful activity. AR 8202. Neither party disputes this determination. As such, this court's review of the ALJ's determination begins with Step Two of the analysis.

15

## DISCUSSION

### I.    Whether SSR 83-20 is applicable when determining the onset of severe impairment.

At Step Two, the Commissioner must determine whether the claimant has a severe impairment, that is, "one that significantly limits the claimant's physical or mental ability to perform basic work activities." *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998). The ALJ utilized SSR 96-4p as the standard for determining whether Hesla suffered from a severe impairment prior to turning twenty two years old. AR 8203.  Specifically, the ALJ stated, "[a]lthough the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone." *Id.* (citing SSR 96-4p).  Additionally, the ALJ held that "[i]n claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process." *Id.*

Hesla does not dispute that the threshold determination of a severe impairment must rely upon objective medical evidence.  Rather, Hesla argues that the ALJ erred by rejecting the standards set forth in SSR 83-20, which provide that lay testimony may be utilized to determine the onset date of a severe impairment.  Hesla cites this court's opinion in *Rowland v. Astrue*, 673

16

F. Supp. 2d 902, 921 (D.S.D. 2009), which explains that "[o]nce a diagnosis is established, but the severity of the degenerative condition during the relevant period is unanswered, the claimant may fill the evidentiary gap with lay testimony." *Id.*

SSR 83-20 provides that in analysis of "disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, at *2.  "Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of onset of disability" and "serve[] as the primary element in the onset determination." *Id.* But "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling."  *Id.*  In these situations, "it may be necessary to explore other sources of documentation . . . from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* at *3. To ensure the judgment has a legitimate medical basis, the ALJ should call on the services of a medical advisor at the administrative hearing. *Id.*

The Commissioner here argues that SSR 83-20 only applies when the claimant has established her disability and the only issue in dispute is the precise date of onset.  Because Hesla has never been found disabled, either before or after 1973, the Commissioner contends that SSR 83-20 does not

17

apply. The Eighth Circuit Court of Appeals rejected this argument, however, in *Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997). In *Grebenick,* similar to here, the issue was whether the claimant could show she was disabled in the absence of contemporaneous medical documentation prior to her date last insured. *Id.* There, the Eighth Circuit held:

> The Commissioner argues that SSR 83-20 applies only for the limited purpose of determining the precise date of onset when the ALJ has already found that a claimant had established her disability and her entitlement to benefits. . . . We cannot agree with the Commissioner's construction of SSR 83-20. The introduction to SSR 83-20 explains that the determination of onset date is critical because 'it may affect the period for which the individual can be paid and *may even be determinative of whether the individual is entitled to or eligible for any benefits.*' SSR 83-20. This language plainly indicates the ruling is intended to apply to cases such as the one at bar.

*Grebenick,* 121 F.3d at 1200 (emphasis in original). Thus, the Eighth Circuit Court of Appeals found that the application of SSR 83-20 "does not turn on whether the ALJ could reasonably have determined that [the applicant] was not disabled before" the date last insured, but rather "whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status." *Id.* at 1200-01.

In *Grebenick*, the plaintiff's date last insured was September 30, 1982. *Id.* at 1201. Her medical records unambiguously established that her symptoms had not reached the disabling level of severity described for multiple sclerosis in 1983 and 1984. Therefore, the Eighth Circuit found that the ALJ did not err in failing to apply SSR 83-20. Unlike *Grebenick*, in the present case, there is extensive evidence that Hesla received significant inpatient

18

psychiatric treatment throughout her adult life and that she currently suffers from a severe psychiatric impairment.  The record is ambiguous as to when her symptoms reached disabling level and whether that occurred before her twenty second birthday.  Therefore, *Grebenick* supports the argument that SSR 83-20 is applicable here.

*Rowland* also provides support for Hesla's assertion that SSR 83-20 is applicable in this analysis.  First, the court stated "[n]otwithstanding the requirement that the severity determination at step two must be based on the medical evidence alone, the determination of when a severe condition began may require consideration of the lay evidence in the record." *Rowland*, 673 F. Supp. 2d at 920 (citing *Smith v. Heckler*, 735 F.2d 312, 316-17 (8th Cir. 1984). Second, the court cited to SSR 83-20 in support of utilizing lay testimony when determining the onset of impairment:

> Once [a] diagnosis is established, but the severity of the degenerative condition during the relevant period is unanswered, the claimant may fill the evidentiary gap with lay testimony. *Grebenick,* 121 F.3d at 1199 (citing *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984); see also SSR 83-20 ("If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore … [i]nformation … from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.") "The ALJ must consider this evidence, even if it is uncorroborated by objective medical evidence."

*Rowland*, 673 F. Supp. 2d at 920 (modifications in original).

19

The use of lay testimony in the onset determination is also consistent with other Eighth Circuit precedent.  See *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) (recognizing retrospective medical diagnoses supported by lay testimony to establish the severity of a medical condition prior to the expiration of insured status); *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995) (stating retrospective medical diagnoses that are properly corroborated through lay testimony can be used to establish disability onset dates).  Thus, the standards set forth in SSR 83-20 are appropriate when determining the onset date of Hesla's severe impairment at Step Two.

II.   **The ALJ applied the incorrect standard in Step Two by exclusively relying upon objective medical evidence when establishing the onset date of severe impairment.**

In deciding this case, the ALJ relied heavily upon Schumacher's testimony that noted the absence of objective medical evidence in the record for the period before Hesla turned twenty two years of age.  According to the ALJ, he relied upon Schumacher because "he is recognized by the Social Security Administration as a medical expert and is charged with being familiar with the requirements of the program." AR 8203. The ALJ's reliance upon Schumacher's testimony and the lack of objective evidence is evident throughout the ALJ's decision. See AR 8204; AR 8206; AR 8207 (stating that the witness's testimony is outweighed by Dr. Schumacher because of speculation and the lack of objective medical evidence). While it is proper for an ALJ to articulate the reasons behind crediting or discrediting each witness, *Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir. 1984), the ALJ must provide sound reasoning behind

20

the weight allocated to each witness. *Guilliams v. Barnhart*, 393 F.3d 798, 801

(8th Cir. 2005).

The ALJ's reliance upon Schumacher's testimony is grounded in the

application of SSR 96-4p, which requires objective medical evidence as

exclusive foundational support for identifying severe impairment.  The

concluding section of the ALJ's decision documents his sole reliance on SSR

96-4p:

> The undersigned notes that the claimant's representative argues
> that SSR 83-20 applies, so that lay evidence and the medical
> opinions can tease out when disability began in a case where it is
> not clearly shown by the medical evidence (Ex. 47 F). This
> argument has been considered. However, an opinion was
> ultimately obtained from Dr. Schumacher, a medical expert, who
> concluded it would be speculative to conclude the claimant had
> any medically determinable mental impairments prior to age 22.
> SSR 83-20 applies to cases where disability has been shown, but
> the onset is unclear. For the purpose of this claim, no disability
> has been shown prior to age 22, and regardless of how emphatic or
> sincerely presented, it cannot overcome the absence of objective
> medical evidence.

AR 8208-09.  Additionally, the ALJ indicated that "the medical opinions of

Dr. Bean, Dr. Tidd, Dr. McGrath, Dr. Brooks Ranney and Dr. David Ranney

and the multiple third party statements do not provide objective evidence of a

medically determinable impairment prior to June 15, 1973." AR 8207-08.

Instead, "they are speculation that the claimant is impaired now, and looking

back was so during the relevant time period." AR 8208. "Accordingly, there are

no medical signs or laboratory findings to substantiate the existence of a

medically determinable impairment prior to age 22." AR 8209.

The ALJ is correct in asserting that current severe impairment can only be supported by objective medical evidence, but it is contrary to precedent, and SSR 83-20, to hold that onset analysis must also exclusively rely upon objective medical evidence. The ALJ's analysis here was essentially the basis for this court's reversal of the 2010 administrative decision and constitutes error as a matter of law. The ALJ is directed to complete the five step disability analysis applying the standards articulated in SSR 83-20.

### III.   Whether Hesla's prior marriage bars eligibility for child's insurance benefits.

The Commissioner asserts that the court should affirm the ALJ's decision because Hesla has not continuously satisfied all the elements of a CIB claim from the day she turned twenty two through the date of her application. According to the Commissioner, Hesla's prior marriage bars eligibility. In support of this argument, the Commissioner relies upon 42 U.S.C. § 402(d) and the "continuous disability" interpretation utilized by the Eighth Circuit. Docket 14, at 7 (citing *Anderson v. Heckler*, 726 F.2d 455 (8th Cir. 1984)).

In the first administrative review of this case, the ALJ held that Hesla's prior marriage barred her eligibility for CIB. AR 19. The Appeals Council reversed the ALJ's decision and held that Hesla's prior marriage did not preclude CIB eligibility. AR 5. The district court's initial review did not address this issue when it reversed and remanded the matter. *See Hesla v. Colvin*, 2013 WL 1305447 (D.S.D. 2013).

On remand, the ALJ did not address the issue of whether Hesla

continuously satisfied all the elements of CIB.  In fact, in the second to last

paragraph of the opinion, the ALJ stated the following:

> The undersigned notes that in a prior decision unfavorable to the
> claimant, an administrative law judge concluded that the
> claimant's prior marriage precludes her claim for Child Disability
> Benefits (Ex. 5A, pg. 10). The Appeals Council ultimately overruled
> him on that issue, although they did not cite any legal authority
> (Ex. 6A, pg. 5). The undersigned makes no finding regarding that
> issue, other than to note that the claimant was previously married,
> but the marriage ended in divorce, and the claimant is not
> currently married[]."

AR 8209.

42 U.S.C. § 405(g) authorizes federal judicial review of a final agency

decision. As it pertains to the impact of Hesla's prior marriage on CIB eligibility,

the agency did not provide a final decision capable of review.

## CONCLUSION and ORDER

The ALJ erred by rejecting the applicability of SSR 83-20 in Step Two of

the disability analysis.  The ALJ also erred by relying exclusively upon objective

medical evidence when ascertaining whether Hesla suffered from a severe

impairment prior to turning twenty two years old. Accordingly, it is ORDERED:

The decision of the Commissioner is REVERSED and REMANDED for

further proceedings consistent with this Memorandum Opinion and Order.

Dated September 30, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

23